Leslie ROSENTHAL, Richard Mortell, Robert Myron, and Alan Freeman, Individually and d/b/a Rosenthal & Company, a limited partnership, Dowdex Corporation, a Delaware Corporation, Plaintiffs,

v.

William T. BAGLEY, Read P. Dunn, Robert L. Martin, John Rainbolt, Gary Seevers, and the Commodity Futures Trading Commission, Defendants.

No. 78 C 1365.

United States District Court, N. D. Illinois, E. D.

May 18, 1978.

Ralph A. Mantynband, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiffs.

Frederick T. Spindel, Commodity Futures Trading Commission, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This is an action for declaratory and injunctive relief seeking to enjoin enforcement of Regulation 32.11 promulgated by the Commodity Futures Trading Commission (CFTC). The regulation, which purports to be temporary, makes it unlawful for any person to solicit or accept orders for, or accept money, securities, or property in connection with the purchase or sale of any commodity option as of June 1, 1978. Plaintiffs Rosenthal & Company, an options broker, and Dowdex Corporation, a grantor of dealer options for which Rosenthal is the sole broker, challenge the regulation on the grounds that: (1) as to Rosenthal, the rule constitutes an adjudicatory order. As such, the informal hearings held by the Commission prior to the adoption of the rule were procedurally inadequate and a denial of plaintiff's constitutional and statutory

rights; (2) the Commission exceeded its authority in adopting this regulation which is anti-competitive and therefore violative of 7 U.S.C. § 19 (1976); (3) the regulation is arbitrary and capricious and an abuse of discretion in light of the alternatives suggested by plaintiff and (4) the underlying premise upon which the Commission made its decision to adopt the regulation is not supported by the facts. Presently before the Court are plaintiffs' motion for a preliminary injunction and defendants' motion for summary judgment.

On February 6, 1978, the CFTC issued Notice of a proposed rule banning all trading of commodity options. It was the view of the Commission that "fraudulent and unsound practices appear to be pervasive and repeated and systematic efforts to evade lawful requirements .. . . seem by far to be the rule rather than the exception." 43 Fed.Reg. 4869, 4870 (Feb. 6, 1978). In response to the Commission's invitation for written comment, 54 persons responded including state regulators, consumer protection organizations, exchanges, dealers, option firms, salespersons, customers and economists. Plaintiff Rosenthal filed with the CFTC "Comments, Petition for Hearing and Petition for the Right to Appear and Examine Witnesses and Submit Evidence in Opposition to the Proposed Rule."

On February 28, 1978, a public hearing was held. All interested persons were invited to orally present their comments. Rosenthal appeared and (1) contested the Commission's belief that the options market was permeated with fraud, (2) reiterated the adjudicatory nature of the proceeding, and (3) demanded that they be given the opportunity to present evidence, cross-examine the oral testimony, etc.

On April 12, 1978, the Commission adopted Regulation 32.11 stating that after full consideration of the Commission's staff report and comments as well as all oral and written comments and based on the Commission's experience it found that: (1) an overwhelming majority of the firms that engage in options trading employ fraudulent and/or illegal practices; (2) options trading was directed almost exclusively to speculative, as opposed to commercial, interests; (3) options serve no economically useful purpose and indeed drain funds from other markets; (4) past experience indicates the futility of merely implementing more stringent regulations particularly since it would require a significant period of time during which time investors would be unprotected; and (5) the ban might be lifted if the Commission is assured that meaningful customer protection can be implemented.

Initially plaintiffs challenge the regulation on the grounds that adoption of the rule in the absence of a full adjudicatory hearing violates their right to due process of law.

Presently pending against plaintiffs are both an administrative and a judicial proceeding brought by the CFTC to enforce the anti-fraud provisions of the Commodity Exchange Act. In both actions the CFTC seeks, among other things, to enjoin Rosenthal from future violations of these provisions.

Based on the existence of these proceedings, Rosenthal argues that, as to them, the rule is more akin to an adjudicatory order than a legislative rule. In effect, plaintiffs argue, the CFTC has, by a purported exercise of its quasi-legislative power, granted to itself the relief it seeks in the pending proceedings. Because the rule has the impact of an order, plaintiffs conclude, it cannot be enforced against them until they have had a full adjudication or hearing within the meaning of 5 U.S.C. §§ 554, 556 (1966).

The distinction between a "rule" and an "order" cannot be drawn with precision. The Administrative Procedure Act (APA), 5 U.S.C. § 551 (1966) provides:

. . . (4) "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the

approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing; . . .

(6) "order" means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing;

Or, as Professor Davis so succinctly stated:

. . . adjudication resembles what courts do in deciding cases and rule making resembles what legislatures do in enacting statutes. 1 Davis, Administrative Law Treatise, § 5.01 (1958).

▮▮▮▮ The CFTC in the promulgation of a total ban on option trading acted fully within its grant of authority from Congress. Section 4c(b) of the Commodity Exchange Act gave the Commission broad power to regulate or prohibit options trading. 7 U.S.C. § 6c(b). In its grant of authority, Congress gave the Commission the choice to act either by rule, regulation or order. It is well settled that:

. . . [W]here an agency, as in this case, is given an option to proceed by rulemaking or by individual adjudication the choice is one that lies in the informed discretion of the administrative agency [cites omitted]. This proposition is not altered by the fact that the resultant rule may be directly applicable to specific individuals or situations when it has enough other characteristics of a rule. Section 2(c) of the Administrative Procedure Act, 5 U.S.C. § 551(4) (1970), explicitly recognizes this policy in its definition of a rule as any 'agency statement of general *or particular* applicability and future effect designed to implement, interpret, or prescribe law or policy. (Emphasis added). *PBW Stock Exchange, Inc. v. SEC,* 485 F.2d 718 (3d Cir., 1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974).

See generally, *FPC v. Texaco, Inc.,* 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1974);

*United States v. Storer Broadcasting Co.,* 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956).

▮▮▮ Regulation 32.11 in every way has the characteristics of a rule: it applies to all persons engaged in the purchase or sale of options; it is not self-enforcing; it applies prospectively only; and it reflects policy considerations of a generalized nature which affect the industry as a whole. 1 Davis, Administrative Law Treatise § 5.01 (1958). The mere fact that it parallels relief sought in independent proceedings cannot alter this result. Nothing in the regulation will affect the adjudication of the claims of the parties in either the judicial or administrative proceeding.

Because Regulation 32.11 is a "rule" within the meaning of APA, Rosenthal is not, as they contend, entitled to a full adjudicatory hearing. Rather, due process is satisfied by the informal hearing held pursuant to the CFTC's rulemaking power. Plaintiffs do not challenge the procedural adequacy of the hearing as a rulemaking proceeding. They do, however, attack the substance of the hearing. That is, plaintiffs challenge the resultant adoption of Rule 32.11 as an arbitrary and capricious abuse of the Commission's authority. In conjunction with the conclusion of capriciousness, plaintiffs strenuously assert that the purported reason behind the Commission's adoption of the rule—that the options industry is inundated with fraud—is not supported by "substantial evidence".

▮▮▮▮ This Court's authority to review a rule promulgated by an agency in the exercise of its quasi-legislative delegation is closely circumscribed. This is as it should be, for any other approach would invite substitution of a court's view for that of the Commission on legislative policy matters. This Court is limited therefore to a determination of whether the adoption of Regulation 32.11 is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law". *National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688, 700 (2nd Cir., 1975). Because this case does not involve an action involving a required

evidentiary hearing, the "substantial evidence" test is inapplicable. *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 622 n. 19, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1972).

■ As noted above, the rulemaking power vested in the Commission by Congress allows the possibility that the Commission might ban options transactions altogether. *British American Commodity Options Corp. v. Bagley,* 552 F.2d 482, 490 n. 13 (2nd Cir., 1977), *cert. denied,* 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977). The Commission's conclusion that the immediate needs of the public require a total ban, while arguably quite severe, cannot be said to be arbitrary or capricious. The record indicates that the Commission carefully considered the enormity of its action. Further, it cannot be said that the Commission acted with undue haste. The subject of a total ban on options trading has long been a topic of discussion within the industry. Plaintiffs do not charge the CFTC with providing insufficient time to frame appropriate comments. Indeed, the Commission extended the period available for written comments. Exhibits submitted with the CFTC's motion for summary judgment, which were not rebutted by plaintiff,[1] indicate that the prevailing attitude among law enforcement officials is that a drastic measure is necessary. Consideration by the Commission of this information in conjunction with its own experience, refutes any allegation of arbitrary conduct on the part of the Commission. While plaintiffs may be convinced that an alternative approach would prove more appropriate or effective, after consideration of suggested alternatives, the Commission was not so convinced.

■ After an examination of the record, this Court finds that the Commission's decision was based on consideration of relevant factors, was not a clear error of judgment and that there existed a rational basis for the adoption of Regulation 32.11. *Bowman Transportation, Inc. v. Arkansas—Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

■ Similarly, because an informal hearing was the appropriate procedure, plaintiffs' § 706 objection is without merit. Under the terms of APA "the proponent of a rule or order has the burden of proof". 5 U.S.C. § 556(a) (1966). However, this burden is merely the burden of going forward, rather than the burden of ultimate persuasion. *Environmental Defense Fund, Inc. v. EPA,* 179 U.S.App.D.C. 43, 548 F.2d 998, 1004 (1976). The burden is on the objectors to demonstrate the invalidity of the regulation.

■ Finally, plaintiffs argue that because the CFTC did not use the least anticompetitive means of achieving its goal that it exceeded its authority. 7 U.S.C. § 19. In its comments following the regulation, the Commission acknowledged its responsibility to consider the anti-trust laws. It found, however, that:

> . . . the public interest considerations underlying the anti-trust laws are predicated on the benefits flowing to the economy and the consumer from the effects of legitimate enterprises vying for a share of a given market through fair dealing and just and equitable principles of trade. In the absence of a demonstrated social or economic utility served by the product sold and where the marketing of that product is uniquely susceptible to, and in fact is accomplished by, fraudulent and abusive practices these public interest considerations are being subverted. 43 Fed.Reg. 16156 (April 17, 1978).

Thus, the Commission not only considered the anti-trust ramifications of its action, it found that failure to act would be signifi-

---

1. Plaintiffs do, however, suggest that this court cannot consider these exhibits because they would be inadmissible as hearsay in a trial on the merits. Plaintiffs' characterization of the exhibits as hearsay is inaccurate. The numerous communications received by the CFTC during the comment period are offered, not "to prove the truth of the matter asserted," but merely as evidence of their existence and the CFTC's consideration of them. Rule 801 Fed. R.Evid.

cantly more deleterious to the type of competition protected by anti-trust legislation. The CFTC more than fulfilled its responsibility to consider the anti-trust laws. Plaintiffs' assertion that the Commission was bound to adopt the least anti-competitive means is without merit. *British American v. SEC,* CCH Comm.Fut.L.Rep. § 20, 245 at p. 21, 334 (S.D.N.Y. Dec. 20, 1976), aff'd in part and rev'd in part on other grounds, 552 F.2d 482 (2nd Cir., 1977), *cert. denied,* 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977).

Therefore, the Court finds that, as a matter of law, the CFTC fully complied with its obligations in the exercise of its rulemaking power and is entitled to summary judgment.